REDMANN, Judge.
Defendant appeals from a judgment casting him for $16,667.29 for services rendered by plaintiff under an agreement with defendant and two corporations.
The agreement is in the form of a letter of August 25, 1966, addressed by plaintiff to “Mr. C. W. Robinson, President, Nicaraguan Long Leaf Pine Lumber Company, Inc.” (“Nipco”). One of its provisions is:

“Scope of this Assignment

ijí íje ‡ í{í ij< íJí
“As per our previous agreement, Mr. Robert H. Oppenheimer [one of plaintiff’s consultants] will provide you with assistance in managerial or financial problems which you may assign personally and/or through the Nicaraguan Long Leaf Pine Lumber Company, Inc., or its successor in name, and/or the Atlantic Coast Chemical Corporation”. (“Atchemco”).
The agreement stipulated a minimum “retainer and deposit” of $2,500, and limited consulting fees to $1,500 monthly for Oppenheimer’s services (and $1,500 for others’ services) unless the excess were authorized “by you”.
The agreement neither provides rates for services nor does it state any express promise to pay for services (however obvious the intent that they were to be paid for). Plaintiff’s letter proposed three ac *61 ceptances which Robinson executed, viz. “Robinson (personal)”; Nipco by Robinson, president; and Atchemco, by Robinson, president.
Plaintiff theorized that defendant was personally liable for all services rendered because of his signature “Robinson (personal)”. The earlier-quoted reference to work-assignment “through” Nipco or At-chemco might also support a conclusion that Robinson alone was the work-assigner and therefore (alone) liable as if Nipco and Atchemco were only his agents.
However, we conclude that the very presence of the two corporations as signatories to the contract excludes the possibility of construing it as an agreement between plaintiff and defendant by which defendant stipulated for benefits to the corporations for which defendant alone was to pay. One could as easily argue that the corporations stipulated for the benefit of defendant.
Presumably none of the three signatures was intended as a “mere ornament”. Whatever the obligations, they purport to be undertaken by three signatories. But they do not purport to be solidary. And solidarity must be express, C.C. art. 2093. Thus the. obligation is not one in solido.
While it might be argued that the three signatories were joint obligors, each liable for a third, we conclude the right of each to “assign” problems to plaintiff suggests (as Robinson testified he understood it) that each is intended to be liable for services on problems “assigned” by it; C.C. art. 2086. It may be that the (already discharged) obligation to pay plaintiff a retainer is joint, and the obligations to pay for the problems assigned are several.
The contract also docs not purport to make defendant the surety of the corporations. Suretyship must likewise be express, C.C. art. 3039.
Thus, whatever may be owed to plaintiff by either or both of the corporations is not owed by defendant.
Robinson did utilize plaintiff’s services in personal financial and tax matters under an earlier agreement. We presume he may have anticipated requiring plaintiff’s services for personal matters under the present agreement. However, there is no proof that any of the services rendered under this agreement were in connection with Robinson’s personal affairs.
Robinson’s majority stock interest in Nipco (and his ultimate interest in Nip-co’s subsidiary Atchemco) could have increased greatly in value because of Nipco’s hoped-for improvement, but, like any shareholder, he is not liable for corporate debts merely because he is a shareholder.
Plaintiff also relics on a letter of March 17, 1967, as acknowledging Robinson’s personal liability. That letter was addressed by plaintiff to “Robinson (personal) and/or Nipco, and was “accepted”, exactly as was the original agreement, by Robinson, Nipco and Atchemco. It accepts a fixing of “your indebtedness” at about $16,617 after crediting the $2,500 retainer deposit against the last bill estimate.
The letter does show an unwillingness by plaintiff to continue working unpaid. It recites “You have indicated to us on several occasions that you acknowledge this indebtedness and that payment is not contingent upon your receiving successful action on your present application for loans from A.I.D. and/or the Export-Import Bank.” However, the letter’s only requirement was a $5,000 payment (which was made) “against which we would work during the next 60 days. We understand and accept the situation which makes it convenient for you to suspend for several months the payment of our invoices. In the event that your account is not completely settled by May 15, 1967, we will then consider what appropriate steps should be taken.”
We are unable to construe the March 17th letter as fixing any liability upon Robinson. We construed the original contract to place liability upon the person *62 or corporation assigning the work. The record shows the work was corporate work; therefore the debt was corporate. We find no express promise by Robinson to pay the corporate debt and therefore no suretyship, C.C. art. 3039. Further, there is no relinquishment of the corporate liability, and thus we find no novation substituting Robinson as the debtor, C.C. arts. 2187, 2189 subd. 2 and 2190.[1]
We find no basis on which the judgment holding Robinson personally liable can be sustained.
The judgment is reversed and plaintiff’s suit dismissed at its cost.

. We add that a letter of September 4, 1968 from Robinson to plaintiff, long after all services had been rendered, equally does not constitute an enforceable promise to pay the corporate debt. It refers to alleged maneuvers by another corporation, and to Robinson’s personal financial difficulties, which have together deprived Mm of all interest in Nipco and Atchemco. Reciting his inability, “as much as I would like”, to send payment, he states that legal action against that other corporation, if successful, “will give me funds to pay the account with you.” However, he also refers to the debt as that of “Nipco/Atchemco”. Disregarding the question whether a promise would have been enforceable (O.O. art. 1893), we conclude no promise was expressed.